Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,689-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| JAMES MCCORMICK, D.D.S., AND KIM MORRIS MCCORMICK | Plaintiffs-Appellants |

versus

| | |
|---|---|
| JOE E. "BUTCH" FORD, JR., WILLIAM "BILL" ALTIMUS, JEROME DARBY, AND CARLOTTA ASKEW-BROWN | Defendants-Appellees |

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,341

Honorable Michael O. Craig, Judge

* * * * *

| | |
|---|---|
| SINCLAIR LAW FIRM, LLC<br>By: Scott C. Sinclair | Counsel for Appellants,<br>James McCormick,<br>D.D.S., Kim Morris<br>McCormick and MCMC<br>Development, LLC |
| NEIL ERWIN LAW, LLC<br>By: Neil T. Erwin | Counsel for Appellee,<br>Joe E. "Butch" Ford, Jr. |

* * * * *

Before STEPHENS, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

Homeowners, whose residence is situated on 128.75 acres in Bossier Parish that is accessed by a private drive continuing from the end of a public road, were denied a building permit to replace their fire-damaged home for failure to file a subdivision plat when they originally purchased the property in 2014. A mandamus action followed, and the district court ordered the conditional approval of the building permit, which required the homeowners either to build a new driveway separate from the existing private road driveway or to dedicate the existing private driveway to public use and construct the driveway to meet city and parish construction standards for a public street. The homeowners now appeal, asserting that the right of the police jury to enforce the subdivision regulations had prescribed. For the reasons set forth more fully herein, we affirm that part of the trial court's judgment requiring the issuance of the building permit, but reverse that portion of the judgment imposing any additional requirements on the homeowners. We also reverse the trial court's assessment of costs between the parties and assess all court costs to the defendant police jury.

**FACTS AND PROCEDURAL HISTORY**

James and Kim McCormick own approximately 128.75 acres (the "McCormick Tract") in Bossier Parish, Louisiana, which is accessed by a private drive that extends from a public road, called Modica Lott Road. Where the McCormick Tract and Modica Lott Road meet, the public road ends and a private asphalt passageway (the "private driveway"), approximately ten feet in width, begins. The private driveway provides passage not only to the residence on the McCormick Tract but also to

residences and tracts of land lying to the north, via a private servitude of passage that was recorded in 1979. The private driveway is located entirely on the McCormick Tract from the point it leaves the public road. A brief history of the McCormick Tract and issues related thereto is instructive.

In 1975, the Bossier Parish Police Jury ("BPPJ") passed Section 110 of the Bossier Parish Subdivision Code, which regulates subdivisions within the parish and requires all subdivisions to be platted, registered, and approved by the parish prior to the recordation of any sale. When there is a division of a larger tract of property into smaller tracts, those smaller tracts are often referred to as a "split-out." Pursuant to the Bossier Parish Subdivision Code, the deed to a split-out is required to have a plat description of the property, not a metes-and-bounds description. If a property owner does not conform to the requirements set forth in Section 110 regarding the sale and recordation of a split-out, the property owner would be subject to monetary penalties, the withholding of approvals or permits required by the Subdivision Code, stop orders, a temporary restraining order or other judicial remedies, and potential prosecution in accordance with Section 110-33 and Section 1-13 of the Bossier Parish Subdivision Code. In 2008, BPPJ passed Ordinance 4202, which requires homeowners to submit an application to BPPJ for the approval of a building permit before beginning construction on a new residence.

The right of BPPJ to enforce these provisions originates in and is controlled by La. R.S. 9:5625, which currently provides for a five-year prescriptive period to bring an enforcement action. Applicability of this parish ordinance to the McCormick Tract is traced back to the ancestor in

2

title who owned what was a 295-acre tract. That prior owner began selling numerous split-out tracts of various sizes and descriptions in 1977. It is stipulated that none of these three split-outs were approved or platted under Bossier Parish's subdivision regulations.

In 2006, the prior owner sold 146 acres to an immediate ancestor in title of the plaintiffs, who in turn, in 2014, sold 128.75 acres to MCMC Development, LLC ("MCMC"), which acreage is hereinafter is referred to as the "McCormick Tract." Plaintiffs Kim and James McCormick are married, but Kim is the sole member of MCMC. The deed for split-out to the McCormicks was recorded in the Conveyance Records of Bossier Parish, Louisiana, and failed to satisfy the subdivision regulations previously enacted by BPPJ.

After the McCormicks' residence was damaged by a fire in 2018, they sought to move from that home and build a new residence on the McCormick Tract. On December 17, 2020, they applied to BPPJ for the issuance of a building permit for the construction of their residential home on the private driveway. By letter dated March 29, 2021, BPPJ denied the building permit, citing violations of the following:

- Section 110-66(b) of the Bossier Parish Subdivision Code, which states no building permit can be issued in a subdivision for which a final plat has not been approved and filed.

- La. R.S. 33:116, which states that when a planning commission has adopted a major street plan, no permit shall be issued for a building unless the street giving access to the lot upon which such structure is proposed to be placed has accepted or opened or has otherwise received the legal status of a public street prior to the application.

- Bossier City Unified Development Code Section 11.4.3, which states that all lots of a subdivision shall have frontage

3

on a public street except that private streets may be approved if built to city and parish construction standards.

In response, James and Kim McCormick and MCMC (hereinafter collectively referred to as "the McCormicks") filed a mandamus action, and then, on April 15, 2021, filed an amended and restated petition, against Joe E. Ford ("Ford"), in his official capacity as Parish Engineer for Bossier Parish, Louisiana on behalf of BPPJ, seeking a court order requiring the issuance of the building permit.

A bench trial on this matter began on November 22, 2022. At trial Ford testified that in 2003, when he began working for the BPPJ, he was tasked with investigating the illegal subdivisions in the parish, and in 2008, an ordinance was passed that required homeowners to obtain a building permit from the BPPJ prior to building a home. Ford testified that McCormicks acquired ownership of the 128.75-acre McCormick Tract by deed, which was recorded in the Conveyance Records of Bossier Parish, Louisiana on March 10, 2014, and that this split-out would have been a violation of the subdivision regulations at the time it was recorded. Kim McCormick testified about the process she and her husband went through to obtain a building permit for the McCormick Tract. She testified that their plan is to have their home at the end of the private drive and have a small asphalt driveway to their home. She stated that she was told by the BPPJ that they would have to give up the private drive to the parish or the parish would refuse to give them a building permit. James McCormick testified that he and his wife were not aware when making land purchases from 2003 to 2013 that they were required to get approval from the parish for those transactions. James also testified regarding BPPJ's expressed

4

concerns related to access to the residences over the private driveway. He described an instance when their current house caught on fire and the fire department was able to send two trucks to battle the fire up the private driveway with no problem. He was unaware of any parish vehicles having trouble accessing the homes off the private driveway, including trash, fire, or police department vehicles.

On January 6, 2023, the trial resumed. Ford took the stand again and testified that BPPJ normally learns that a subdivision has been illegally split-out when the landowner seeks a building permit, and the McCormicks filed for their building permit in December of 2020. Ford testified that in his opinion, during the six years the McCormicks owned the McCormick Tract before seeking a building permit, there was no way for BPPJ to know that the tract was a part of an illegal split-out. Ford testified to his concern regarding the ability of parish vehicles to have access to the homes off the private driveway. On cross-examination, Ford admitted that the illegal subdivisions are made a part of the public record when they are recorded with the parish. Ford stated that he has a small office and it is not feasible for his staff to discover all split-outs, although he did admit that he was able to get a stack 18 inches high of illegal split-outs from the parish tax assessor's office when he requested that they be pulled. Ford testified:

> Q: So, when you've testified in today that the only way that you have to figure out and - and become aware of split-outs is through building permit applications; that's not accurate is it?
>
> A: Well, I mean, we could go through and look at everything that's filed, I guess, but that's -- that has not been our procedure. We rely on them to do their job, but then the building permits are now catching them …

5

Q: So even though there's other mechanisms available to you
to find out about split-outs the mechanism that you rely on
is building permits?

A: Yes, sir.

At trial, the McCormicks introduced evidence of numerous instances of split-out tracts being sold and building permits being issued that mirror their situation. Among those identified was the 2014 building permit issued to the McCormicks' neighbor, Ken Lowery, who owns property off the private driveway and who sought a building permit from BPPJ. Although BPPJ acknowledged that the split-offs from the private driveway were a problem, Lowery's building permit was granted on November 21, 2014, with the stipulation that he had 90 days to get a public dedication of the private driveway. Lowery never submitted the road dedication, and BPPJ never took any action to enforce the stipulation. Lowery constructed his home and continues to use the private drive to access his residence on the property from Modica Lott Road.

At the conclusion of the trial, the district court ruled that BPPJ had to issue a building permit to the McCormicks for the construction of the residence, but made the issuance of the permit subject to their compliance with one of the two following provisions:

1. The driveway from the public portion of Modica Lott Road to the residence must be separate from the existing road that is the subject of the 1979 servitude of passage, or, alternatively,

2. The driveway to the residence can use the road that is the subject of the 1979 servitude of passage, but only if that road is:

   a. publicly dedicated and the Bossier Parish police jury agrees to maintain it, or
   b. imposed to the city and parish construction standards that are applicable under the Uniform Development Code Section 11.4, Subsection 3.

6

This appeal by the McCormicks followed.

## ASSIGNMENTS OF ERROR

The McCormicks assert the following five assignments of error:

**First Assignment of Error: The trial court committed legal error by improperly resorting to equity.**

**Second Assignment of Error: The trial court committed legal error by failing to properly apply La. R.S. 9:5625 to find that the McCormick tract acquired nonconforming legal status.**

**Third Assignment of Error: The trial court committed legal error by failing to properly apply La. R.S. 33:116 to find that the street giving access to the McCormick tract is a public street.**

**Fourth Assignment of Error: The trial court committed legal error by failing to direct the parish to issue the building permit to the McCormicks without any conditions.**

**Fifth Assignment of Error: The trial court committed legal error by failing to tax the parish with all costs of court.**

## DISCUSSION

Finding that the four first assignments of error all involve the ruling by the trial court that the McCormicks were conditionally entitled to a building permit, subject to certain prerequisites, we will address them together. Next, we will address the assignment of error focused on the assessment of costs.

At issue before us is what rights and responsibilities are incumbent on the parties relative to the BPPJ implementing and enforcing subdivision restrictions, and what actions required by the McCormicks relative to those provisions and standards.

The McCormicks filed their split-out deed to the 128.75-acre McCormick Tract with the Bossier Parish clerk of court on March 10, 2014,

which included a metes-and-bounds description of the property.  During his

testimony, Ford confirmed this recordation of only this metes-and-bounds

description was a violation of the applicable subdivision ordinances.  BPPJ

has argued that the McCormick Tract could not be issued a building permit

because it did not comply with Chapter 110 of the Bossier Parish Code of

Ordinances and Section 11.4.3 of the Bossier City-Parish Unified

Development Code.  La R.S. 9:5625 states, in pertinent part:

> A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, … which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, **must be brought within five years from the first act constituting the commission of the violation.**
>
> …
>
> B. In all cases where the prescription provided for herein has accrued, the particular property involved in the violation of the zoning restriction, building restriction or subdivision regulation shall enjoy the same legal status as land uses, construction features of buildings or **subdivisions made nonconforming by the adoption of any zoning restriction, building restriction or subdivision regulation.**

(emphasis added).  In its written reasons for judgment, the trial court stated

that Ford "acknowledged that as parish engineer, he had access to [the illegal

subdivision deeds] but due to the large volume of recording and extremely

limited staff it was impossible to keep up with by going behind the filings to

check compliance."  The court then noted that Ford testified that building

permits had been issued to other homeowners on the private road extension

of Modica Lott Road, both before and after the 2008 permit law came into

8

effect. The court also noted the 2014 dispute between BPPJ and Lowery, wherein Lowery was eventually granted a building permit subject to the caveat that he obtain a 60-foot right of way dedicated to the public on the private driveway. The court further noted the attempt in 2019 by a neighboring property owner to have the private driveway dedicated to the public use. The court ultimately found that:

> BPPJ does not have a reasonable ability to research every filing with the Bossier Parish Clerk of Court to determine compliance by individual property owners. The applicable period that applies to [the McCormicks] as to their tract of property is the attempt by John Good in 2019 to dedicate the private drive.

We disagree. It is apparent from the record and from testimony that BPPJ has set up the issuance of building permits as an effective "choke point" to enforce subdivision regulations, when purchasers must submit themselves to the arduous and expensive undertaking of obtaining permission from the BPPJ to build on these "illegal subdivision of tracts." That policy decision, while perhaps economical, is based on the apparent calculated risk that the majority of purchasers of split-out tracts would seek to build their residence within the five years[1] permitted to seek such enforcement. BPPJ would effectively have a window of time during which property owners must come before it, ask permission, and pay a fee to build a home on their own property. That calculated risk comes with the actual risk that some property owners may not seek a building permit within the time period during which BPPJ has a legal remedy. The issue, therefore, becomes exactly what action, and therefore what date, is sufficient to trigger notice of the violation and the running of prescription for enforcement of the

---

[1] La. R.S. 9:5625

9

subdivision regulations. When should BPPJ be deemed to have notice of the violation of the subdivision regulations so that prescription began to run?

The McCormicks argue that prescription began to run in 2014, when they filed their deed for the illegally subdivided McCormick Tract in the registry of the clerk of court. BPPJ argues its notice of the violation would be the date of the application of building permit or no earlier than 2019, when a neighbor of the McCormicks unsuccessfully sought to have the private drive dedicated to public and the issue again came to the attention of BPPJ. Rather than agreeing to that request, the McCormicks purchased the property of that neighbor and, thus, ended that application for a building permit for that property from BPPJ. We agree with the McCormicks that the action of violation of the subdivision regulations was the recordation in the public records of the meets-and-bounds deed by which they acquired ownership of the McCormick Tract in violation of the applicable subdivision restrictions.

La R.S. 9:5625(A)(1) is clear that the five-year prescriptive period begins to run "from the first act constituting the commission of the violation." That act was the filing of the illegal subdivision deed, described in metes and bounds, in the parish registry on March 10, 2014 by the McCormicks, in violation of Sections 110-63 and 110-194 of the subdivision ordinances, which require any person who subdivides land to obtain the approval of the police jury before the recordation of a subdivision and before the sale of any subdivided property. The McCormicks did not obtain such approval and recorded in the public records their nonconforming deed. Such

10

an act is sufficient to put BPPJ on notice and to begin the tolling of prescription of the right to enforce the regulations.

Although enforcement of the illegal subdivisions may be onerous for the BPPJ, to say that prescription does not begin to run until such time as the parish decides it would like to investigate violations does not comport with Louisiana law, which is clear that the recordation of a deed translative of title is notice to third parties of the contents of that deed. This court has held that all persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. *Compass Energy Operating, LLC v. Robena Prop. & Royalty Co., Ltd.*, 52,468 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1160; *Thomas v. Lewis*, 475 So. 2d 52 (La. App. 2 Cir. 1985). For example, recordation of title is considered an overt and unambiguous act that, along with acts of possession, can constitute notice for adverse possession in Louisiana. *Cockerham v. Cockerham*, 44,578 (La. App. 2 Cir. 8/19/09), 16 So. 3d 1264.

Considering the above, the trial court erred in finding that prescription did not begin to run until 2019, when neighboring property owners attempted to dedicate the private drive to the public. There is clear evidence in the record that the BPPJ had been aware of the illegal subdivisions off Modica Lott Road since at least 2008. The trial court itself noted in its written reasons for judgment that the BPPJ attempted to have the private drive publicly dedicated in 2014 during its dispute with Lowery. Applying the plain language of La R.S. 9:5625(A)(1), prescription began to run as of the date of the violation, and the public notice of the violation occurred on March 10, 2014, when the deed was recorded in the public record.

11

Accordingly, pursuant to La. R.S. 9:5625(B), on March 10, 2019, five years after the violation occurred, BPPJ lost its ability to enforce the subdivision regulations on the McCormick Tract. La. R.S. 9:5625(B) provides that after prescription runs, the illegal subdivision is grandfathered in on all subdivision regulations. As such, the McCormick Tract is not required to conform to the subdivision regulations sought to be enforced by BPPJ.

The trial court also found that the McCormick Tract violated La. R.S. 33:116, which states, in pertinent part:

> When a planning commission has adopted a major street plan, no structure shall be erected on any lot within the affected area, nor shall a building permit be issued therefor unless the street giving access to the lot upon which such structure is proposed to be placed has been accepted or opened as or has otherwise received the legal status of a public street prior to that time, or unless such street corresponds with a street shown on the official master plan or with a street on a subdivision plat approved by the planning commission or with a street on a street plat made by and adopted by the commission or with a street accepted by the local legislative body, after submission to the planning commission, by a favorable vote required in R.S. 33:115.

The record indicates that the parties stipulated the McCormick Tract abuts and is directly connected to Modica Lott Road. The trial court stated that the McCormick Tract "fronts directly on Modica Lott Road which as previously discussed is a public road." Although the McCormicks' proposed home would be at the end of the private drive, they own the entire lot, including the private drive, that abuts a public road. It may be a long private driveway, but it is a private driveway that abuts a public road, nonetheless. As such, there was error by the court below, and we find the McCormick Tract to be in compliance with La. R.S. 33:116.

Additionally, the trial court declared that its ruling is "based as much on an equitable resolution as on application of existing law. Part of that equity decision has to take into account the other current and future property owners that live along the private drive in question and will be directly impacted by the decision of this court." While this Court acknowledges that the private driveway is used by others to access their respective properties, that fact is of no legal consequence here, as it relates to the McCormicks and the McCormick Tract. Those other homeowners are not a party to this suit. The equitable resolution fashioned by the trial court, while admirable in its attempt to craft a mutually beneficial resolution to all involved in the dispute, is inappropriate in the present case. La. C.C. art. 4; *Saloom v. Dep't of Trans. & Dev.*, 22-00596 (La. 12/9/22), 354 So. 3d 1179; *Donelon v. Shilling*, 19-00514 (La. 4/27/20), 340 So. 3d 786, *cert. denied*, 141 S. Ct. 1508, 209 L. Ed. 2d 187 (2021).

As a part of its equitable resolution, the trial court granted the McCormicks' building permit but subjected it to the following conditions, as outlined in its written reasons for ruling:

1. McCormick shall construct the driveway leading to the proposed construction from the small portion of the public road Modica Lott Road connecting directly to the proposed home. In doing so, they are in compliance with La. R.S. 33:116; or, alternatively,

2. McCormick shall either dedicate the private drive for public use and maintenance by BPPJ; or build the private drive to the standards required by UDC code 11.4 and have said plan approved by the appropriate governing body.

The Louisiana Constitution Article 1, Section 4 states that "every person has a right to acquire, own, control, use, enjoy, protect, and dispose of private property." It further states that a person's property shall not be

13

taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. La. Const. Art. 1, §4. The constitution requires the State to pay just compensation, to the full extent of the loss, when it takes property. *Larkin Dev. North, LLC v. City of Shreveport*, 53,374 (La. App. 2 Cir. 3/4/20), 297 So. 3d 980, *writ denied*, 20-01026 (La. 12/22/20), 307 So. 3d 1039. This mandate is required both when the state takes land through court proceedings (expropriation) or damages land (inverse condemnation). *Id.*

As noted above, the McCormick Tract is in compliance with La. R.S. 33:116, and therefore, the first condition imposed on the McCormick Tract is unnecessary. As to the second condition set forth by the trial court, we determined above that the McCormick Tract acquired the same legal status as a legal subdivision pursuant to the expiration of prescription of La. R.S. 9:5625 on March 10, 2019, five years after recordation of the McCormick Tract split-out tract deed. As such, the parish cannot require the McCormicks to have a plat approved by BPPJ, dedicate a minimum width for a street right of way, bring the street up to minimum parish standards, dedicate the street to the public, or other requirements set forth in the subdivision ordinances. To allow the trial court to force parish subdivision standards on the McCormick Tract when the BPPJ allowed its right to enforce those standards to prescribe would be authorizing an unconstitutional taking of the McCormicks' property rights. Therefore, the trial court's conditions placed on the McCormicks' building permit are not authorized by law. We find the first four assignments of error have merit,

14

and reverse the judgment of the trial court, insofar as it placed any conditions on the McCormicks' building permit.

Lastly, the McCormicks argue in their fifth assignment of error that the trial court erred in failing to tax the parish with all costs of court. Louisiana C.C.P. art. 1920 provides that, except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. *Mullenix v. Mullenix*, 54,827 (La. App. 2 Cir. 1/11/23), 355 So. 3d 1140. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, and its allocation of those costs will not be disturbed absent evidence of an abuse of discretion. *Id.*; *Jackson v. Herring*, 48,019 (La. App. 2 Cir. 5/22/13), 114 So. 3d 1245, *writ denied*, 13-1452 (La. 9/27/13), 123 So. 3d 727.

Here, the trial court ruled that each party shall bear their own costs of the trial court proceedings, as part of a ruling in which it attempted to afford each party some measure of success in equity. Having found the undergirding of the judgment itself in attempting to provide for equity over law to have been in error regarding the allocation of court costs, we find this assignment of error to likewise have merit. The division of court costs by the district court to track its erroneous ruling was an abuse of discretion, and we hereby reverse and render on that issue, casting BPPJ with all costs of the proceeding.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's ruling insofar as it grants the building permit to the McCormicks and reverse the trial court's ruling insofar as it put any conditions on the issuance of the building permit.

15

We likewise reverse the trial court's assessment of court costs and assess all costs to Joe E. "Butch" Ford, in his official capacity as Parish Engineer for Bossier Parish, Louisiana.  Costs of this appeal, in the amount of $430, are assessed to Joe E. "Butch" Ford, in his official capacity as Parish Engineer for Bossier Parish, Louisiana.

**AFFIRMED IN PART; REVERSED IN PART.**